## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DOUGLAS GILMORE, EXECUTOR  :
OF THE ESTATE OF BESS GILMORE :   NO. 3:08-CV-01058 (SRU)
            :
   Plaintiff,     :
            :
  v.         :
            :
PAWN KING, INC. and    :
WILLIAM V. MINGIONE,   :
            :
   Defendants.    :    JANUARY 10, 2011

### DEFENDANTS' LOCAL RULE 56(a)(1)
### STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56(a)(1) of the Local Rules for the District of Connecticut,

Defendants Pawn King, Inc. and William V. Mingione (collectively, "Defendants")

respectfully submit this statement of undisputed facts in support of their motion for

summary judgment.[1]

  1.  Pawn King, Inc. ("Pawn King"), is a corporation duly organized and

existing under the laws of the State of Connecticut.  (Mingione Dep. at 13.)

  2.  Pawn King's president is William V. Mingione ("Mingione") (Mingione Dep.

at 13.)

  3.  Between 2005 and 2007, Bess Gilmore ("Ms. Gilmore") visited Pawn King

from time to time where she transacted business.  (Gilmore Dep. at 23.)

  4.  Douglas Gilmore ("Douglas") is the son of Plaintiff's decedent, Ms.

Gilmore.  (Gilmore Dep. at 11, 22.)

---

[1] The relevant portions of the record on which Defendants rely are attached as exhibits to Defendants' memorandum of law in support of their motion for summary judgment.

5.      During each visit, Douglas, an attorney admitted to the bar of the State of Connecticut, accompanied his mother.  (Gilmore Dep. at 13-14, 23.)

6.      Douglas filed the instant suit against Defendants on behalf of his mother. (Gilmore Dep. at 19.)

7.      After Ms. Gilmore's death, Douglas became the fiduciary of his mother's estate. (Gilmore Dep. at 22.)

8.      In 2003, Douglas filed an action on behalf of his mother against a pawn shop in Bridgeport in which Ms. Gilmore asserted many of the very same claims using a remarkably similar complaint.  (Gilmore Dep. at 98-99, 102, 106, Ex. 11.)

9.      As part of the settlement reached in the 2003 action, Ms. Gilmore secured the return of several items that she sold to another pawn shop; and it is clear that these very same items were then sold to Pawn King to set up the claims in this case. (Gilmore Dep. at 13-14, 23, 103-106 (Tab B).)

10.      During each of Ms. Gilmore's trips to Pawn King, she brought with her one or more items and sought cash.  (See, e.g., Gilmore Dep. at 25.)

11.      In each instance, Ms. Gilmore, with her attorney-son present, sold these items to Pawn King and, after having an opportunity to review the proposed agreement, (Gilmore Dep. at 41-2), she acknowledged and agreed to such sale by signing the respective agreements, (Gilmore Dep. at 33-34), each of which contain the title "BUY/SELL AGREEMENT," (Gilmore Dep. at 40, Ex. 2).

12.      Just above the line designated for the signature of the "seller," is an acknowledgement as follows:

I, THE UNDERSIGNED, HAVE CAREFULLY READ THE TERMS AND
CONDITIONS ON THE FRONT AND BACK OF THIS AGREEMENT AND
AGREE TO THEM.

(Gilmore Dep. at 33, Ex. 2.)

13.    In addition to a statement on the front of the agreement that the

customer "[d]id  . . . bargain, sell & deliver the . . . property," the terms and

conditions contained on the back of the agreement referenced in the

acknowledgment are as follows:

> Seller agrees that by signing the signature line on front that this is a draft
> in exchange for cash.
>
> In consideration of the sum paid by the "Purchaser" and which amount the
> receipt of which is acknowledged by the named person, the "Seller", said
> Seller does sell, transfer and assign all rights, title, and interest in the
> described property to the Purchaser.  Seller states and represents that as
> a condition of this transaction, Seller is the lawful owner of the described
> property, and that said property is free and clear of all claims, liens, and
> encumbrances and that Seller has title and the full power to sell, transfer,
> and deliver said property as provided herein.
>
> The Seller and/or the Designee named herein by the Seller is hereby
> granted the option by the Purchaser to repurchase the described property
> from the Purchaser at a mutually agreeable price.  It is expressly
> understood that the Seller and/or his Designee has no obligation
> whatsoever to repurchase the described property.  If any claim against the
> described property is made by any person or entity, the Seller agrees to
> assist the Purchaser in defending Seller's ability to transfer good title and
> agrees to pay all costs of defense of such title, including reasonable
> attorneys' fees and court costs.  The Seller and his Designee may not
> transfer their right to repurchase the described property without the
> consent of the Purchaser. The Seller hereby states that the Seller and the
> Designee are over eighteen (18) years of age, and the Seller has read,
> understands and agrees to the terms of this contract.
>
> The Seller states that he/she understands that this is a transaction and not
> a loan. The seller also understands that no interest is being charged for
> this transaction.

IF THE ABOVE STATED VERIFICATION IS PROVEN OTHERWISE, I
PROMISE FULL RESTITUTION AND UNDERSTAND THAT I WILL BE
CRIMINALLY PROSECUTED TO THE FULLEST EXTENT OF THE LAW.

NOT RESPONSIBLE FOR LOSS OR DAMAGE TO PROPERTY
DESCRIBED ABOVE, ARISING OUT OF FIRE, THEFT, RIOT OR ANY
OTHER CASUALTY OR CAUSE.

ALL TRANSACTIONS CONFIDENTIAL
CASH ONLY ON ALL OPTION REPURCHASES.
NO GOODS SENT C.O.D. • NO PERSONAL CHECKS ACCEPTED.
NO GOODS SHOWN FOR REPURCHASE UNLESS PAID IN ADVANCE.
VERBAL AGREEMENTS FOR ADDITIONAL DAYS ARE NOT BINDING,
NOTICE: SEE REVERSE SIDE.

(Gilmore Dep. at 36, Ex. 2.)

14.    The December 24, 2007 transaction between Ms. Gilmore and Pawn King

is representative of those referenced in the Complaint. (Gilmore Dep. at 30-31, 52-53,

Ex. 2.)

15.    On December 24, 2007, Ms. Gilmore physically delivered three items to

Pawn King, specifically, a bracelet, a pocket watch, and a lighter.  (Gilmore Dep. at 42,

Ex. 2.)

16.    In exchange, Ms. Gilmore received the agreed-upon sum of $1,500.00.

(Gilmore Dep. at 43, Ex. 2.)

17.    Ms. Gilmore secured a right to repurchase these three items within thirty

(30) days for a price of $1,800.00.  (Gilmore Dep. 43-44, Ex. 2.)

18.    This price reflects the original price paid by Pawn King ($1,500.00) plus a

twenty percent (20%) monthly service charge, in this instance, $300.00.  (Gilmore Dep.

43-44, Ex. 2.)

19.     Ms. Gilmore could have repurchased these three items on or before January 23, 2008 by paying Pawn King the sum of $1,800.00.  (Gilmore Dep. 43-44, Ex. 2.)

20.     Ms. Gilmore understood this procedure given that she did in fact repurchase certain items (Gilmore Dep. at 43-44).

21.     Had she failed to do so, Ms. Gilmore would have lost the right to repurchase these items, but would not owe anything to Pawn King.  (Gilmore Dep. Ex. 2.)

22.     After entering into the sale and repurchase agreements with Pawn King, Ms. Gilmore sent at least four letters to Mingione in July of 2008.  (Gilmore Dep. at 58-66, Ex. 3-6; Compl. Ex. N-Q.)

23.     In these letters, which were ghostwritten by Douglas (Gilmore Dep. at 58-66), Ms. Gilmore purported to complain about Pawn King's business practices, including the fees and property disposal practices that are the subject of this action.

24.     Douglas solicited the assistance of the Office of the Connecticut Attorney General.  (Gilmore Dep. at 67, Ex. 7).

25.     In his letters to the Office of the Connecticut Attorney General, Douglas failed to identify his client as being his own mother, instead referring to her simply as an "ill widow."  (Gilmore Dep. at 68, Ex. 7.)

26.     In his letters to the Office of the Connecticut Attorney General, Douglas failed to disclose his history of accompanying his mother to pawn shops and then suing them.  (Gilmore Dep. Ex. 7.)

27.    The Connecticut Attorney General has not sought to intervene or appear in this action.

28.    Douglas contacted the Town Attorney for the Town of Stratford to levy threats of liability against the Town in connection with the transactions between his mother and Pawn King.  (Gilmore Dep. at 75-76, Ex. 8.)

29.    In response, the Town Attorney stated that the Town "conducted a review of Pawn King and concluded that the operation of Pawn King appears to comply with the state law."  (Gilmore Dep. at 79, Ex. 8.)

THE DEFENDANTS

By:_____/s/_____
      Robert M. Frost, Jr. (ct19771)
      Brian E. Tims (ct27962)

      Zeldes, Needle & Cooper, P.C.
      1000 Lafayette Boulevard
      Bridgeport, CT  06604
      (203) 333-9441 (Telephone)
      (203) 333-1489 (Facsimile)
      rfrost@znclaw.com (E-Mail)

Their Attorneys

## CERTIFICATION

I hereby certify that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Dated at Bridgeport, Connecticut on this 10th day of January, 2011.


_____/s/_____
Brian E. Tims