## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DOUGLAS GILMORE, EXECUTOR   :
OF THE ESTATE OF BESS GILMORE  :         NO. 3:08-CV-01058 (SRU)
                          :
        Plaintiff,        :
                          :
     v.                 :
                          :
PAWN KING, INC. and        :
WILLIAM V. MINGIONE,      :
                          :
      Defendants.      :         FEBRUARY 14, 2011

### DEFENDANTS' REPLY BRIEF
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In further support of their Motion for Summary Judgment (Doc. 94), Defendants Pawn King, Inc. and William V. Mingione (collectively, "Defendants") respectfully submit this reply to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (Doc. 98).  Despite Plaintiff's efforts to portray Defendants as villains seeking to somehow harm "proud people," the record shows that the decedent, Bess Gilmore, entered into lawful buy-sell agreements with Defendant Pawn King, Inc.  The agreements were entered into with full knowledge of the terms and with the advice and legal counsel of her son, Attorney Douglas Gilmore.  Because Plaintiff cannot establish that these buy-sell agreements were unlawful under state law – a threshold finding that even Plaintiff concedes is the "gravamen" of his complaint (Pl. Br. at 2) – Defendants are entitled to summary judgment as a matter of law.

## ARGUMENT

### I.     The <u>Chin</u> Decision Is Compelling Persuasive Authority

Plaintiff goes to great lengths to marginalize the value of Judge Pickard's decision in <u>Chin v. Mingione</u>, Docket No. CV 02-0087522-S (Conn. Super. Dec. 2, 2003) (Pickard, J.), even digressing into a discussion about the role of the Reporter of Judicial Decisions and Westlaw's "Key-Cite" system.   (Pl. Br. At 5-6).  There is no denying, however, that <u>Chin</u> is directly on point.  The case involved the exact same scenario at issue here: a claim by an individual against a pawnbroker alleging that a buy-sell agreement is a <u>de facto</u> loan and that the service fee charged was in excess of the interest limit of Conn. Gen. Stat. § 21-44.  The fact that neither the parties, nor the Court, would have been aware of the <u>Chin</u> decision but for the fact that Mr. Mingione was a defendant in <u>Chin</u>, is irrelevant and beside the point.    In the end, it is the analysis of the opinion that counts, and the analysis in <u>Chin</u> is cogent and well-supported.

### II.    Public Act 97-164 Modified The Holding Of <u>Rhodes</u>

Plaintiff's arguments concerning the effect of P.A. 97-164 on <u>Rhodes</u> also fail. (<u>See</u> Pl. Br. at 18-19.)

As set forth in Defendants' initial memorandum, the <u>Rhodes</u> Court held that the interest limitation contained in Conn. Gen. Stat. § 21-44 applied to buy-sell agreements. The Court so concluded because, at that time, Conn. Gen. Stat. § 21-44 implicated "indirect" interest.  The General Assembly, however, subsequently enacted P.A. 97-164 and it removed this critical language upon which the holding in <u>Rhodes</u> was based.

Recognizing that he must explain the statutory amendment somehow, Plaintiff essentially parrots the arguments of the defendant in <u>Chin</u> and latches on to the fact

that the legislature removed both the words "directly" <u>and</u> "indirectly" when it changed the statute. (<u>See</u> Pl. Br. at 18.) He argues that the removal of both words resulted in no net change to the meaning of the statute.

This argument is flawed because it would reduce the language changes wrought by P.A. 97-164 to nothing more than legislative tinkering, and it further assumes that the legislature was completely ignorant of the Connecticut Supreme Court's holding in <u>Rhodes</u>. Common sense, as well established rules of statutory construction, prove that neither is true. The Connecticut Supreme Court has held repeatedly that, when assessing legislative action, the legislature is presumed to have intended to modify the meaning of a statute when it amends the language of the statute. <u>See</u> <u>Chatterjee v. Comm'r of Revenue Serv's</u>, 277 Conn. 681, 693 (Conn. 2006) ("[w]hen the legislature amends the language of a statute, it is presumed that it intended to change the meaning of the statute and to accomplish some purpose.").

In this case, the General Assembly is presumed to have been aware of <u>Rhodes</u>; it is presumed to have understood that significance of the "indirectly" language; and it is therefore appropriate to conclude that the General Assembly intended to limit the ability of Conn. Gen. Stat. § 21-44 to regulate buy-sell agreements. The legislature evidently concluded that, in the future, those agreements would be negotiated by the parties in an arms-length fashion and the service fees would be determined by market forces and the intent of the parties. Had it intended the <u>status quo</u> under <u>Rhodes</u> to continue, it would have left the "directly and indirectly" language of Conn. Stat. § 21-44 intact.

Accordingly, this Court should conclude, as Judge Pickard did correctly in <u>Chin</u>, that the enactment of P.A. 97-164 modified the holding of <u>Rhodes</u> by limiting the application of Conn. Gen. Stat. § 21-44 to conventional pawnbroker loans. It does not

3

reach buy-sell agreements, even if they could be construed to charge interest indirectly through use of service fees.  Because Defendants' buy-sell agreements are not unlawful under Conn. Gen. Stat. § 21-44, and this finding is essential to all but one of Plaintiff's claims, Defendants are entitled to judgment as a matter of law on Counts One through Nineteen.

III.    **As A Matter Of Law, Defendants Cannot Be Deemed To Have Intentionally Evaded Any Usury Limitations**

Plaintiff also erroneously argues that there is an issue of material fact as to whether Defendants intentionally evaded the usury limitations of Conn. Gen. Stat. § 21-44.  (See Pl. Br. at 19.)  This argument fails as a matter of law because Defendants' buy-sell agreements are otherwise permitted by P.A. 97-164.  As discussed herein, P.A. 97-164 had the effect of taking buy-sell agreements out of the reach of the usury provision of Conn. Gen. Stat. § 21-44.  It would be inconsistent to conclude that the buy-sell agreements are not usurious based on this change in the law, but then to conclude that these agreements are nonetheless usurious because they "evade" that very same provision.  Such a conclusion would nullify the effect of P.A. 97-164.  Accordingly, as a matter of law, Defendants cannot be deemed to have intentionally "evaded" any usury provision and Plaintiff is entitled to judgment as a matter of law.

IV.    **Plaintiff Should Not Be Permitted To Replead Count Twenty**

Plaintiff should not be permitted to replead Count Twenty at this late stage. Although Federal Rule 15 directs that leave to amend a complaint should be "freely give[n]" when "justice so requires," this Court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to Defendants. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007).  Here, Plaintiff's

4

request should be denied because of Plaintiff's undue delay in bringing the claim and the prejudice to Defendants that will result if it is added at this late stage.

Count Twenty is currently a claim for damages under the Code of the Town of Stratford.  Defendants moved for summary judgment on the basis that the Town of Stratford does not have the authority to promulgate a private right of action and Plaintiff now concedes that the claim is not cognizable at law.  While performing the research necessary to arrive at this conclusion, however, Plaintiff has spotted a brand new claim based not on the Code of the Town of Stratford, but rather Conn. Gen. Stat. § 21-47(a). This statute permits a party to recover treble damages from one who engages in the business of a pawnbroker but is not lawfully licensed.

Now, at this late stage, Plaintiff is attempting to recast Count Twenty as a claim for damages on the theory that Defendant Pawn King, Inc. was not lawfully licensed because its license was issued by the wrong municipal entity (the Chief of Police as opposed to the Board of Selectmen).  (See Pl. Br. at 29.)  This change in theory is futile on its face because Defendant Pawn King, Inc. cannot be held liable for damages based on any error in the license issuing practices of the Town of Stratford.  The request is also untimely and will be unduly prejudicial to Defendants given that discovery has long closed and a dispositive motion has been filed.  For these reasons, the Court should grant summary judgment in favor of Defendants on Count Twenty.  In addition, the Court should not permit Plaintiff to salvage Count Twenty and should deny his request to replead.

## CONCLUSION

For the foregoing reasons, and those contained in Defendants' initial memorandum of law, Defendants' Motion for Summary Judgment should be granted.

THE DEFENDANTS

By: /s/ Robert M. Frost, Jr.
    Robert M. Frost, Jr. (ct19771)
    Brian E. Tims (ct27962)

    Zeldes, Needle & Cooper, P.C.
    1000 Lafayette Boulevard
    Bridgeport, CT  06604
    (203) 333-9441 (Telephone)
    (203) 333-1489 (Facsimile)
    rfrost@znclaw.com (E-Mail)

Their Attorneys

## CERTIFICATION

I hereby certify that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

Dated at Bridgeport, Connecticut on this 14th day of February, 2011.

/s/ Robert M. Frost, Jr.
Robert M. Frost, Jr.